IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CYNTHIA JOHNSON<br>dba The Little Surf Shack<br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JOHN DOE(S)<br>　　　　　　　　Defendants. | Case No. 1:18-689-LMB/TCB<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

The Plaintiff, Cynthia Johnson dba The Little Surf Shack, by counsel, and for her Complaint states as follows on information and belief:

**Nature of Action**

1.   This is an action at law for defamation per se, defamation, and tortious interference with business relationship.

**Background**

2.   Plaintiff's claim arises from defendants' unsupported and untrue allegations to the online marketplace entity, Amazon.com ("Amazon") that plaintiff was engaged in sales of counterfeit FINGERLINGS brand products.

3.   Plaintiff received an edited and redacted version of the allegations in an email from the Seller Support group of Amazon. The allegations of the emailed version include the word "counterfeit", a list of 48 Amazon Stock Identification Numbers ("ASINs"), an Amazon complaint ID number, the company name "Incopro", and an email address of

"wowwee.enforcement@incoproip.com" but not the entire text of the allegations or the signature of the person or entity who filed the complaint.

4. Through her counsel, plaintiff has spoken with counsel for the company that is listed as the manufacturer of the FINGERLINGS products. Plaintiff requested a full copy of the filed complaint from counsel but was informed that the complaint and its allegations were prepared with an online system that did not provide the complainant with a completed copy. Counsel had no copy of the filed complaint to provide. Plaintiff was directed to Amazon for a full copy of the complaint and its allegations.

5. Through her counsel, plaintiff sent a written request for a full copy of the complaint to the legal department of Amazon by facsimile. That request was followed by a telephone call that was directed to a voice mail system. Amazon has not responded.

**Jurisdiction and Venue**

6. This Court has diversity jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332, as this action involves citizens of different states and the asserted rights and interest of the plaintiff in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs.

7. This Court has personal jurisdiction over defendants because defendants intentionally directed the tortious acts described herein to plaintiff who resides in Virginia and in this judicial district, or otherwise established contacts with Virginia and this judicial district sufficient to make the exercise

of personal jurisdiction proper. See *Calder v. Jones,* 104 S.Ct. 1482 (1984) and *Cook v. McQuate,* 2016 WL 5793999 (E.D. VA 2016).

8. Venue over the claims of the plaintiff is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to the claims and damages occurred in this district.

**Parties**

9. The plaintiff is a natural person living in the Commonwealth of Virginia. Plaintiff is a retired lawyer with a long history of civil service representing the US International Trade Commission before trade and appellate courts in matters involving intellectual property. She was also Chief of Staff of that agency from 2000-2008. Following her retirement, plaintiff operated her business as a proprietorship under the name "The Little Surf Shack." Her business sells toys and other merchandise in the online marketplace of Amazon.com ("Amazon").

10. Defendant Does are believed to be the persons or entities responsible for filing a complaint with Amazon that accuses plaintiff of trafficking in counterfeit goods under the FINGERLINGS brand name.

11. Despite plaintiff's efforts, it is not reasonably possible to identify the defendants at this time or the true content of the defamatory allegations made. Thus, the name and statements made by defendants,

whether individual, corporate, associate, or otherwise are unknown to plaintiff who thereby sues defendants by such fictitious names.

12. Plaintiff believes that information obtained in discovery will lead to the identifications of defendants' true identities and a complete copy of the defamatory statement thereby permitting plaintiff to amend this Complaint and state the same.

## Facts Common To All Counts

13. As most consumers are aware, the Marketplace at Amazon.com is a convenient place to buy any number of goods. There exists no alternate, comparable platform with a consumer base comparable to that of amazon.com as approximately one-half of all online retail sales are made on amazon.com. The other half of online retail sales are diffused amongst millions of websites.

14. Roughly 50% or more of the goods listed on amazon.com are by independent sellers who source their products directly from the manufacturers or who buy products at retail from authorized sources and then resell them without modification. It is lawful to resell original, unmodified products under what has become known as the "first sale doctrine." See *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924) and Restatement (Third) of Unfair Competition, § 24 (2009).

15. Amazon has developed a unique process that is believed to be an automated process for addressing allegations of IP rights and

counterfeit item allegations. That process appears to be based on a lack of substantive investigation and reliance on a review only for completeness. Such a review is prone to misuse by zealous rights owners, those representing them, and unethical competitors. A former Investigation Specialist for Amazon's Seller Performance team, Chris McCabe, has written about the misuses o the Amazon rights reporting system. In his article, "False Infringement Claims are Rife on Amazon," https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/ (April 11, 2018), Mr. McCabe writes (Exhibit 1):

> In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.
>
> Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form. **Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.**
>
> **They don't independently verify that any of the information is actually correct, or valid.** The rights owner makes a legally-binding declaration in the form, and signs it. What if you can't locate a party who submits a false form against you? It's up to you to chase them down and then show Amazon teams that the infringement allegations are false.

16.     Plaintiff, through her business, buys toys from local stores and resells them without modification in the online marketplace of

Amazon. Some of the products plaintiff purchased and resold in late 2017 were interactive FINGERLINGS toys. These toys were available in a number of different colors and model designations but were in limited supply in October 2017.

17. Plaintiff's business model is known as "retail arbitrage" which serves as a valuable economic model that lawfully moves product from an undervalued market having supply (e.g., products that are sold in retail stores in clearance sales or hard-to-find products) to higher value markets with greater demand (e.g., the Amazon marketplace). The effects of retail arbitrage thus increase store sales, help stores to make space for the presentation of newly arrived merchandise, and make space for new inventory. The difference between the selling and buying prices, minus applicable marketplace and related fees, represents the profit that sustains plaintiff's business.

18. Plaintiff does not repackage, modify, or otherwise change the product purchased from the products purchased from local retail stores. Plaintiff resells the same product in the same packaging it was in when purchased from the store.

19. Amazon is known to use a variety of factors to evaluate the sellers on its marketplace and to control whether, and what, each seller is permitted to offer to sell. Specifically how Amazon weighs and considers each factor is not shared with the seller. A seller can only generally discern

that allegations of poor service or selling counterfeit products, whether or not true, are more likely than not to get a seller blocked from selling one or more specific items or suspended completely. If a seller's account is suspended, all money owed to the seller and any inventory held by Amazon in its Fulfilled By Amazon program become unavailable while any outstanding loans or fees for past sales remain due and payable.

20. On 26 January 2018, plaintiff was notified by Amazon that a complaint had been filed against her alleging that she had sold 48 models of counterfeit FINGERLINGS products, as identified by 48 Amazon Standard Identification Numbers (ASINs). See Exhibit 2.

21. The email from Amazon removed much of the content of the original allegation, but included the following:

> Hello,
>
> We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:
>
> --INCOPRO
>
> --wowwee.enforcement@incoproip.com
>
> If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com
>
> If you believe that the reported content is authentic, you may email noticedispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.
>
> We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

ASIN: B074Q2ZVM6, B074RSYT68, B074RWGJ9T, B074RX14VS, B074RXYS89, B074SDJHRS, B074TJSPPV, B0754N2F9Y, B075P5WB15, B075PHXJMG, B075V3N3PT, B075VJYQ49, B076DWBF8W, B076DWLT55, B076DXYD1S, B076DYH8D2, B076DYQF7J, B076DZ4VB3, B076J6F92F, B076J7FZXR, B076J7JM8Q, B076J7T244, B076J839CJ, B076NNFCSQ, B076NRG82L, B076T37YHM,  B076T4R7TB, B076TGS8DM, B0772S2KSB, B077BMF6V8, B077NYXPSK, B077QH7NTB, B077TB9VPK, B077VNYL5F, B077VY6L9W, B077XT8CQ7, B077Z7DV6R, B07812C86H, B07858VNTG, B0785XJX63, B0786Q5JN9, B078C8KR1L, B078FL8MY4, B078FLHFNV, B078GH25QP, B078JNHJ77, B078PQWDCY,  B078WGS34W

Infringement type: Counterfeit

Trademark asserted: 5325724

Complaint ID: 1371274171

Sincerely,
Seller Performance Team
Amazon.com

22. A "counterfeit" is defined as: "In criminal law. To forge; to copy or imitate, without authority or right, and with a view to deceive or defraud, by passing the copy or tiling forged for that which is original or genuine. Most commonly applied to the fraudulent and criminal imitation of money." (https://thelawdictionary.org/counterfeit/) By its nature, allegations of trafficking in counterfeit items implies moral turpitude and implies an unfavorable opinion of the person named.

23. Every product type offered for sale on amazon.com is given an ASIN by Amazon. An ASIN cannot, therefore, be counterfeit. That label can only

apply to products regardless of what ASIN was used in offering the product for sale on Amazon.

24. Defendant's allegations of trafficking in counterfeit goods are demonstrably untrue.

25. Plaintiff never offered to sell and did not sell goods under 26 of the 48 listed product ASINs.

26. As to the remaining 22 ASINS, all of these products were purchased directly from the store shelves of major retailers in the United States (e.g., Walmart, Target, and Toys-R-Us, etc.) and sold without modification in their original packaging. Such a sale is permissible under what is known as the "first sale" doctrine. See Restatement (Third) of Unfair Competition, § 24 (2009) and *Prestonettes, Inc. v. Coty*, 44 S.Ct. 350 (1924).

27. When provided with information of plaintiff's limited sales and copies of receipts for the 22 accused products, counsel for the manufacturer refused to withdraw the complaint or the allegations regarding plaintiff that were made to Amazon.

28. By publishing the defamatory statements to Amazon as alleged herein, the defendants intended to, and did, charge the plaintiff with trafficking in counterfeit goods.

29. The defamatory statements alleged herein were authored by or with the approval of the defendants. The defamatory statements were published with actual, and apparent approval, and ratification of the

defendants, and the statements proximately caused special and general damages to the plaintiff. The statements caused the plaintiff injury to her personal and business reputation, embarrassment, humiliation, and emotional distress.

30. The publication of such defamatory statements was intended to refer to the plaintiff, and was so understood by those upon reading or hearing of such defamatory statements.

31. Defendants individually and jointly have acted with reckless disregard toward plaintiff. None of defendants purchased any of the accused products that were offered for sale by plaintiff and did not conduct an examination of the product before making the allegations to Amazon that plaintiff's products were counterfeit items. An inspection of the FINGERLINGS products offered for sale by plaintiff would have revealed that the products were authentic and genuine.

32. Defendant's defamatory statements, taken as whole, are defamatory *per se,* because the false statements impute to the plaintiff a criminal offense involving moral turpitude, that, if the allegations were true, would make plaintiff vulnerable to indictment and criminal punishment.

33. The defamatory statements harm the plaintiff in her business, interfere with her business relationship with Amazon, and jeopardize her ability to continue selling products in the Amazon.com marketplace.

## Count I: Libel *Per Se*

34. The plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

35. The statements authored by the defendants and published by the defendants to Amazon, referred to herein are defamatory *per se,* because the false statements impute to the plaintiff a criminal offense involving moral turpitude, that is, if the allegations were true, she would be subject to indictment and criminal punishment for trafficking in counterfeit goods under 18 USC § 2320.

36. The statements were calculated to, and do hold the plaintiff up to unsubstantiated allegations of moral turpitude by such publication, the defendants did injure the plaintiff's reputation with Amazon.com.

37. The statements, individually and taken together as a whole, prejudice the plaintiff in her business relationship with Amazon, casting her as a counterfeiter. Pointedly, Amazon denied her request for a capital loan citing the outstanding complaint of counterfeit trafficking as the reason for the denial (Exhibit 3). Amazon had previously provided plaintiff with capital loans upon request at sequentially escalating amounts.

## Count II: Libel *Per Quod*

38. The plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

39. The statements authored by the defendants and published by defendants have caused, are causing, and will continue to cause the plaintiff injury to her reputation, name, and ability to sell the FINGERLINGS products on Amazon. Defendants' statements have increased the risk that she will be barred from selling any products in the Amazon marketplace.

40. The plaintiff has been injured in reputation and good standing in the selling community in which her business operates.

### Count III: Tortious Interference With Business Relationship

41. The plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

42. Before the acts described above, plaintiff enjoyed a good business relationship with Amazon.

43. Defendants knew, or should have known, about plaintiff's business relationship with Amazon when it identified her as a seller on Amazon.

44. Defendants deliberately, recklessly, and without factual support filed a complaint with Amazon alleging that the FINGERLINGS products she was offering for sale were counterfeit.

45. As a direct result of defendants' actions, plaintiff's relationship with Amazon has been tainted with moral turpitude of the allegations.

46. The unfounded allegations made by defendants have harmed plaintiff. She is now precluded from selling FINGERLINGS products and has been denied access to capital loans from Amazon.com. Defendants' actions

have also harmed plaintiff's reputation and placed a negative mark on her seller metrics with Amazon that increases the likelihood that she will be barred from selling any products through the Amazon marketplace.

## Trial By Jury

47. Plaintiff demands a trial by jury.

## Prayer for Relief

WHEREFORE, plaintiff requests this Court to enter the following relief for the plaintiff, Cynthia P. Johnson dba The Little Surf Shack, that:

A. For judgment that plaintiff has been defamed and harmed by the actions of defendants in the amount of THREE MILLION DOLLARS ($3,000,000.00), as compensatory damages, plus interest at the maximum rate allowed by law on the entire judgment from the date of January 26, 2018, until paid;

B. For judgment that plaintiff is entitled to three times the amount of awarded damages as enhanced damages for publishing defamatory allegations with reckless disregard of the truth of those allegations;

C. That preliminary and permanent injunctions be issued enjoining defendants and their agents, affiliates, all persons in concert or participation with any of them, and any entity owned or controlled by any of defendants who receives actual notice of the injunction from (i) making any allegations of counterfeit goods or trafficking in counterfeit goods without first performing an inspection of the goods involved, and (ii) retaining a full and complete copy

of all such allegations made for a period of one year after publication to any third party;

  D. That defendants preserve all records (including electronically stored information) associated with the making of any allegations to any third party that concern counterfeit goods or the trafficking in counterfeit goods for a period of one year after publication to any third party;

  E. That plaintiff be awarded interest, including pre-judgment interest, on any of the foregoing sums in accordance with 28 USC § 1961;

  F. That plaintiff be awarded her costs in this civil action, including reasonable attorney fees and expenses; and

  G. That plaintiff be awarded such other and further relief as the court may deem just and proper.


Dated: June 8, 2018           Respectfully submitted,

                     **Johnson Legal PLLC**

                     /s/ Lance G. Johnson

                     Lance G. Johnson, #27,929
                     12545 White Drive
                     Fairfax, Virginia 22030
                     Tel: 202-445-2000
                     Fax: 888-492-1303
                     *Attorney for Plaintiff*