## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

CYNTHIA JOHNSON
dba The Little Surf Shack
                Plaintiff,

v.                                              Case No. 1:18-cv-00689-LMB-TCB

ASHLY E. SANDS,                 Plaintiff Demands Trial By Jury

INCOPRO INC.,
a Delaware Corporation

WOWWEE USA, INC.
a Delaware Corporation
                Defendants.

## AMENDED COMPLAINT

The plaintiff, Cynthia Johnson dba The Little Surf Shack, by counsel, and for her Complaint states as follows on information and belief:

### Nature of Action

1.     This is an action at law for defamation *per se*, defamation, and tortious interference with a business relationship.

### Background

2.     Plaintiff's claim arises from unsupported and untrue statements made by defendants to the online marketplace entity, Amazon.com ("Amazon"), that plaintiff was engaged in sales of counterfeit FINGERLINGS brand products.

3.     Plaintiff received a notification from Amazon with a copy of the allegations in an email. The allegations assert that Plaintiff had been charged

with selling counterfeit products identified by 48 Amazon Stock Identification Numbers ("ASINs") in a complaint filed with Amazon. The complainant was identified by the company name "Incopro" and an email address of "wowwee.enforcement@incoproip.com." On information received, the complaint did not further explain the basis for the allegation of counterfeit trafficking.

4. The allegations are objectively and demonstrably false.

**Jurisdiction and Venue**

5. This Court has diversity jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332, as this action involves citizens of different states and the asserted rights and interest of the plaintiff in controversy exceeds $75,000.00, exclusive of interest and costs.

6. This Court has personal jurisdiction over defendants because defendants directed the tortious acts against plaintiff who resides in Virginia and in this judicial district, and have otherwise established contacts with Virginia and this judicial district sufficient to make the exercise of personal jurisdiction proper.

7. Venue over the claims of the plaintiff is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to the claims occurred in this district.

## Parties

8. Plaintiff is a natural person living in the Commonwealth of Virginia. Plaintiff is a retired lawyer with a long history of civil service representing the US International Trade Commission before trade and appellate courts in matters involving intellectual property. Following her retirement, plaintiff began operating her business as a proprietorship under the name The Little Surf Shack. Her business sells toys and other merchandise in the online marketplace of Amazon.

9. Ashly E. Sands is a partner at the law firm of Epstein Drangel LLP and the head of its anti-counterfeiting group. Epstein Drangel LLP has an office at One Grand Central Place, 60 East 42nd Street, Suite 2520, New York, NY 10165.

10. Incopro, Inc., is a foreign stock corporation registered in the State of Delaware and has branch offices in several locations in the United States. Their international headquarters are located at 22 Perct Street, London, UK W1T 2BU and a mailing address of 1st Floor, New Penderel, 283-288 High Holborn, London, UK WC1V 7HP.

11. Wowwee USA, Inc. is a company organized under the laws of Delaware having an office at 875 Prospect Street, Suite 204A, La Jolla, California 92037.

## FACTS COMMON TO ALL COUNTS

12. Plaintiff, through her business, buys toys from local stores and resells them without modification in the online marketplace of

Amazon. Some of the products plaintiff purchased and resold in late 2017 were interactive FINGERLINGS toys. These toys were available in a number of different colors and model designations but were in limited supply in October 2017.

13. Plaintiff's business model is known as "retail arbitrage" which serves as a valuable economic model that lawfully moves product from an undervalued market having supply (e.g., products that are sold in retail stores in clearance sales or hard-to-find products) to higher value markets with greater demand (e.g., the Amazon marketplace). Such resales activity is permitted by *Prestonettes v. Coty*, 44 S.Ct. 350 (1924) and Restatement (Third) of Unfair Competition, §24 (2009).

14. A robust retail arbitrage market is important for an efficient economy. The effects of retail arbitrage increase store sales, help stores to make space for the presentation of newly arrived merchandise, and make space for new items. The difference between the selling and buying prices, minus applicable marketplace and related fees, represents the profit that sustains plaintiff's business.

15. Plaintiff does not repackage, modify, or otherwise change the products purchased from local retail stores. Plaintiff resells the same product in the same packaging it was in when purchased from the store.

16. Amazon is known to use a variety of factors to evaluate the sellers on its marketplace and to control whether, and what, each seller is permitted to offer to sell. Specifically how Amazon weighs and

considers each factor is not shared with the seller. A seller can only generally discern that allegations of poor service or selling counterfeit products, whether or not true, are more likely than not to get a seller blocked from selling one or more specific items or suspended completely. If a seller's account is suspended, all money owed to the seller and any inventory held by Amazon in its "Fulfilled By Amazon" program become unavailable while any outstanding loans or fees for past sales remain due and payable.

17. On January 26, 2018 plaintiff received an email from Amazon bearing the subject line "Fwd: Notice of Policy Warning." This email then reported that an unidentified "rights owner" filed a complaint alleging that she was selling counterfeit goods. The email from Amazon identified 48 product listings (called ASINs in Amazon parlance) and identified the "Infringement type" as "Counterfeit." See Exhibit 1:

> Hello,
>
> We received a report from a rights owner concerning the authenticity of the products listed at the end of this email. We removed this content, but we may let you list these product(s) again if we receive a retraction of the complaint from the rights owner:
>
> --INCOPRO
>
> --wowwee.enforcement@incoproip.com
>
> If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com
>
> If you believe that the reported content is authentic, you may email noticedispute@amazon.com with proof of authenticity. This includes, but is not limited to, an invoice or Order ID.

5

> We consider allegations of intellectual property infringement a serious matter. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com
>
> To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.
>
> ASIN: B074Q2ZVM6, B074RSYT68, B074RWGJ9T, B074RX14VS, B074RXYS89, B074SDJHRS, B074TJSPPV, B0754N2F9Y, B075P5WB15, B075PHXJMG, B075V3N3PT, B075VJYQ49, B076DWBF8W, B076DWLT55, B076DXYD1S, B076DYH8D2, B076DYQF7J, B076DZ4VB3, B076J6F92F, B076J7FZXR, B076J7JM8Q, B076J7T244, B076J839CJ, B076NNFCSQ, B076NRG82L, B076T37YHM, B076T4R7TB, B076TGS8DM, B0772S2KSB, B077BMF6V8, B077NYXPSK, B077QH7NTB, B077TB9VPK, B077VNYL5F, B077VY6L9W, B077XT8CQ7, B077Z7DV6R, B07812C86H, B07858VNTG, B0785XJX63, B0786Q5JN9, B078C8KR1L, B078FL8MY4, B078FLHFNV, B078GH25QP, B078JNHJ77, B078PQWDCY,  B078WGS34W
>
> Infringement type: Counterfeit
>
> Trademark asserted: 5325724
>
> Complaint ID: 1371274171
>
> Sincerely,
> Seller Performance Team
> Amazon.com

18.     On information, "the submitter of the complaint did not provide any detailed explanation of the claimed infringement."

19.     All of the products in that listing of 48 involved one or more toys or collections of toys called "Fingerlings" that were popular, but in limited supply, during the 2017 holiday gift-buying season.

20.     The mark associated with the "trademark asserted" is the FINGERLINGS mark for "Collectable toy figures; Molded toy figures; Positionable toy figures; Toy animals" and owned by WowWee Group Limited, 92 Granville Rd, Tsim Sha Tsui East Kowloon HONG KONG.

21. Plaintiff responded to the Policy Warning email with the explanation of her sources and copies of the retail purchase receipts for the products involved in the notice. See Exhibit 2. Her request for reconsideration was denied by Amazon, citing a need for retraction of the complaint by the IP rights owner who was identified only by the email address <wowwee.enforcement@incoproip.com>. Exhibit 3.

22. Plaintiff responded to the email address noted in the Amazon email and requested retraction, attaching the retail sales receipts as proof of authenticity. (Exhibit 4, pp. 1-2.)

23. A telephone call was subsequently received from a lawyer representing herself as counsel for the manufacturer of the toys involved with the complaint and its related entities. This lawyer was defendant Sands.

24. During the telephone conversation, defendant Sands refused to provide any information pertaining to the complaint filed with Amazon and how the designation of "counterfeit" became a part of that complaint.

25. Counsel for plaintiff summarized the substance of that call in an email to defendant Sands. (Exhibit 5, pp. 2-3.) Defendant Sands disputed that summary in a reply email. (Exhibit 5, pp. 1-2.)

26. In her reply email (Exhibit 5), defendant Sands refers to "inauthentic ASINs" and "authentic ASINs" as the basis for the complaint to Amazon. These labels have no basis in fact or law. On information and belief, Amazon assigns its own internal ASIN to any new product offering when the product offering page is prepared. Thus, there can be no "inauthentic" ASIN.

27.     The ASIN associated with a product listing on Amazon bears no factual relationship to the issue of whether a product is genuine or a counterfeit. A counterfeit is a status that has an established meaning at law.

28.     A "counterfeit" is defined as: "In criminal law. To forge; to copy or imitate, without authority or right, and with a view to deceive or defraud, by passing the copy or tiling forged for that which is original or genuine. Most commonly applied to the fraudulent and criminal imitation of money." (https://thelawdictionary.org/counterfeit/) By its nature, allegations of trafficking in counterfeit items implies moral turpitude and implies an unfavorable opinion of the person named.

29.     The complaint filed with Amazon (<u>Exhibit 1</u>) does not identify "inauthentic ASIN" as the basis for infringement. That isn't even an option that Amazon recognizes in its infringement report form. (See <u>Exhibit 6</u>.) The complaint alleges counterfeit "under penalty of perjury."

30.     Plaintiff's reputation and relationship with Amazon has been demonstrably harmed as a result of the false complaint filed with Amazon. Amazon is known to track the performance of its sellers and any complaints filed against it. The negative effects of a false complaint for trafficking in counterfeit thus serves as a negative factor that would become cumulative if any additional, false complaints are filed.

31.     From time to time, Amazon makes available short-term loans to its better sellers to provide their businesses with capital for expansion during

peak sales seasons. In past, plaintiff has been offered such loans and used them to expand her business.

32. Following the defamatory complaint, plaintiff has been foreclosed from additional capital loans. The complaint filed against plaintiff was specifically noted as the reason for denial of her recent loan request. See Exhibit 7.

33. Defendant's allegations of trafficking in counterfeit goods are demonstrably untrue.

34. Plaintiff never offered to sell, and did not sell, goods under 26 of the 48 listed product ASINs.

35. As to the remaining 22 ASINS, all of these products were purchased directly from the store shelves of major retailers in the US (e.g., Walmart, Target, and Toys-R-Us, etc.) and sold without modification in their original packaging. Such a sale is permissible under what is known as the "first sale" doctrine. See Restatement (Third) of Unfair Competition, § 24 (2009) and *Prestonettes, Inc. v. Coty*, 44 S.Ct. 350 (1924).

36. When provided with information of plaintiff's limited sales and copies of receipts for the 22 accused products during a telephone conversation, defendant Sands refused to withdraw the complaint or the allegations regarding plaintiff that were made to Amazon.

37. By publishing the defamatory statements to Amazon as alleged herein, the defendants intended to, and did, charge the plaintiff with

trafficking in counterfeit goods and interfere with the business relationship that existed between plaintiff and Amazon

38. Amazon has great incentive to take seriously and act quickly on allegations of trafficking in counterfeit goods. As an internet-based seller of goods, consumer trust in the authenticity of its products is very important to its business model.

39. As a result, Amazon's current system for receiving and acting on claims of infringement is heavily skewed to favor the claimant with little to no effort made to evaluate the merits of a claim it receives. Accordingly, false claims of IP infringement made to Amazon are well known and widely abused. See Exhibit 8.

40. On information and belief, Amazon tracks the number and types of complaints made against those who sell on its online marketplace, including plaintiff. This tracking system can result in limitations on the seller's account, limitations on the trust placed by Amazon in plaintiff, or complete suspension thereof, regardless of the status of any other products offered by the seller.

41. On information and belief, allegations of trafficking in counterfeit goods, such as that involved in the present case, are tracked by Amazon and adversely affect the seller rating of plaintiff regardless of whether the allegations are true or not.

42. On information and belief, defendant Sands was aware of Amazon's sensitivity to allegations of counterfeit sales, Amazon's tracking

system, and the impact that allegations of counterfeit tracking, whether or not valid, would have on plaintiff's account.

43. The defamatory statements alleged herein were authored by, or with the approval or under the direction of the defendants.

44. The defamatory statement was published with actual, and apparent approval, and ratification of the defendants.

45. The defamatory statement by defendants caused the plaintiff injury to her personal and business reputation, embarrassment, humiliation, and emotional distress.

46. The publication of the defamatory statement was intended to refer to the plaintiff, and was so understood by Amazon upon receipt of the defamatory statement.

47. The publication of the defamatory statement to Amazon was done with an intent to restrict or curtail lawful resales of genuine FINGERLINGS brand products.

48. Defendants individually and jointly have acted with reckless disregard toward plaintiff. None of defendants purchased any of the accused products that were offered for sale by plaintiff and did not conduct an examination of the product before making the allegations to Amazon that plaintiff's products were counterfeit items. An inspection of the FINGERLINGS products offered for sale by plaintiff would have revealed that the products were authentic, genuine, and unmodified.

49. Defendant's defamatory statements, taken as whole, are defamatory *per se,* because the false statements impute to the plaintiff a criminal offense involving moral turpitude, that, if the allegations were true, would make plaintiff vulnerable to indictment and criminal punishment.

50. The defamatory statement harms the plaintiff in her business, interferes with her business relationship with Amazon, and jeopardizes her ability to continue selling products in the Amazon marketplace.

### Count I: Libel *Per Se*

51. Plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

52. The statements authored by the defendants and published by the defendants to Amazon, referred to herein are defamatory *per se,* because the false statements impute to the plaintiff a criminal offense involving moral turpitude, that is, if the allegations were true, she would be subject to indictment and criminal punishment for trafficking in counterfeit goods under 18 USC §2320.

53. The statements were calculated to, and do hold the plaintiff up to unsubstantiated allegations of moral turpitude by such publication, the defendants did injure the plaintiff's reputation with Amazon.

54. The statements, individually and taken together as a whole, prejudice the plaintiff in her business relationship with Amazon, casting her as a counterfeiter.

## Count II: Libel *Per Quod*

55.     Plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

56.     The statements authored by the defendants and published by defendants have caused, are causing, and will cause the plaintiff injury to her reputation, name, and ability to sell the FINGERLINGS products on Amazon. Defendants' statements have increased the risk that she will be barred from selling any products in the Amazon marketplace.

57.     Plaintiff has been injured in reputation and good standing in the selling community in which her business operates.

## Count III: Tortious Interference With Business Relationship

58.     Plaintiff herein incorporates by reference into this count all of the allegations appearing above in this Complaint.

59.     Before the acts described above, plaintiff enjoyed a good business relationship with Amazon.

60.     Defendants knew, or should have known, about plaintiff's business relationship with Amazon when it identified her as a seller on Amazon.

61.     Defendants deliberately, recklessly, and without factual support filed a complaint with Amazon alleging that the FINGERLINGS products she was offering for sale were counterfeit.

62.     As a direct result of defendants' actions, plaintiff's relationship with Amazon has been tainted with moral turpitude of the allegations.

63.     The unfounded allegations made by defendants have harmed plaintiff. She is now precluded from selling FINGERLINGS products even if lawfully acquired and legally eligible for resale. Defendants' actions have also harmed plaintiff's reputation and placed a negative mark on her seller metrics with Amazon that increases the likelihood that she will be barred from selling any products through the Amazon marketplace.

### Prayer for Relief

WHEREFORE, plaintiff requests this Court to enter the following relief for the plaintiff, Cynthia P. Johnson dba The Little Surf Shack, that:

A.    For judgment that plaintiff has been defamed and harmed by the actions of defendants in the amount of THREE MILLION DOLLARS ($3,000,000.00), as compensatory damages, plus interest at the maximum rate allowed by law on the entire judgment from the date of January 26, 2018, until paid;

B.    That preliminary and permanent injunctions be issued enjoining defendants and their agents, affiliates, all persons in concert or participation with any of them, and any entity owned or controlled by any of defendants who receive actual notice of the injunction from (i) making any allegations of counterfeit goods or trafficking in counterfeit goods without first performing an inspection of the goods involved, and (ii) retaining a full and complete copy of all such allegations made for a period of one year after publication to any third party;

  C. That defendants preserve all records (including electronically stored information) associated with the making of any allegations to any third party that concern counterfeit goods or the trafficking in counterfeit goods for a period of one year after publication to any third party;

  D. That plaintiff be awarded interest, including pre-judgment interest, on any of the foregoing sums in accordance with 28 USC § 1961;

  E. That plaintiff be awarded her costs in this civil action, including reasonable attorney fees and expenses; and

  F. That plaintiff be awarded such other and further relief as the court may deem just and proper.

Dated: October 24, 2018        Respectfully submitted,

                  **Johnson Legal PLLC**

                  /s/ Lance G. Johnson

                  Lance G. Johnson, #27,929
                  12545 White Drive
                  Fairfax, Virginia 22030
                  Tel: 202-445-2000
                  Fax: 888-492-1303
                  *Attorney for Plaintiff*