### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CYNTHIA JOHNSON<br>dba The Little Surf Shack<br>　　　　　　　　　Plaintiff, | Case No. 1:18-cv-00689-LMB-TCB |
| v. | |
| ASHLY E. SANDS, | |
| INCOPRO INC.,<br>a Delaware Corporation | |
| WOWWEE USA, INC.<br>a Delaware Corporation<br>　　　　　　　　　Defendants | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO

## INCOPRO'S 12(b)(6) MOTION TO DISMISS

Table of Contents

I. The Incopro Email Is Defamatory ........................................................................ 1

II. The Incopro Email is Not Privileged ..................................................................... 4

III. The Tortious Interference Claim, as Amended, Is Proper....................... 12

IV. Conclusion ................................................................................................ 13

**Cases**

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,* 189 F. Supp. 2d 385 (E.D. Va. 2002) .................................................................................................. 9

*Experience Hendrix, LLC v. HendrixLicensing.com,* 766 F.Supp.2d 1122 (W.D. Wash. 2011) ........................................................................................................... 8

*Fitbit, Inc. v. Laguna 2, LLC,* 2018 WL 306724 (N.D. Cal. 2018), reconsideration denied, No. 17-CV-00079-EMC, 2018 WL 620121 (N.D. Cal. Jan. 30, 2018) . 10, 11

*Ford Motor Co. v. Nat'l Indem. Co.,* 972 F. Supp. 2d 862 (E.D. Va. 2013) ........... 6

*H.E. Crawford, Co. v. Dun & Bradstreet, Inc.,* 241 F.2d 387 (4th Cir. 1957) .... 10

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.,* 2014 WL 6452173 (W.D. Wash. 2014) ........................................................................................................... 7

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.,* 691 Fed.Appx. 406 (9th Cir. 2017)(Fed.R.App.P. 32.1) ....................................................................................... 7

*Harrell v. Colonial Holdings, Inc.,* 923 F. Supp. 2d 813 (E.D. Va. 2013) ............ 6

*Mansfield v. Bernabei,* 727 S.E.2d 69 (2012) ....................................................... 5

*Pierce Cty., Wash. v. Guillen,* 537 U.S. 129 (2003) .............................................. 4

*Sarno v. Clanton,* 59 Va. Cir. 384 (2002) ........................................................... 11

*Schaecher v. Bouffault,* 772 S.E.2d 589 (2015) .................................................... 1

*Smalls v. Wright,* 399 S.E.2d 805 (Va. 1991) ............................................... 10, 11

*Spirito v. Peninsula Airport Comm'n,* 2018 WL 6075489 (E.D. Va 2018) ............ 4

*Webb v. Virginian-Pilot Media Cos., LLC,* 752 S.E.2d 808 (Va. 2014) ................. 4

*Williams v. Garraghty,* 249 Va. 224, 236, 455 S.E.2d 209 (1995) .................... 12

Incopro has moved to dismiss on the grounds that: (a) The Incopro email complaint to Amazon cannot be construed as defamatory (Incopro Brief at 5-7), (b) the Incopro email complaint is shielded from review as an absolute privileged communication under the *Noerr-Pennington* doctrine or qualified privilege to third parties (Incopro Brief at 7-10), (c) the tortious interference claim fails as (i) an exercise of First Amendment rights (Incopro Brief at 10), (ii) an improper reliance on defamation to make out a claim of tortious interference (Incopro Brief at 10-11), and (iii) the Incopro email complaint is privileged (Incopro Brief at 11). Incopro is wrong and its motion to dismiss should be denied.[1]

## I. The Incopro Email Is Defamatory

Incopro focuses primarily on whether its statement to Amazon was actionable. "An actionable statement is both false and defamatory. Defamatory words are those tending so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. A false statement must have the requisite defamatory sting to one's reputation." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (2015).

---

[1] The court will note that Plaintiff has filed a motion for leave to file a Second Amended Complaint to address the Incopro email complaint that resulted in the Amazon complaint whose ID number was identified in the first amended complaint. Plaintiff served Amazon with document requests in its earlier subpoena that would have encompassed the Incopro email. Amazon did not provide plaintiff with that email but was apparently in error when its counsel reported that the content of the filed complaint was the same as that in the Amazon notification email. The first amended complaint was filed in reliance on this representation. The Second Amended Complaint corrects the error.

"[I]t is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." *Id.* at 595.

In the present case, those statements are (Incopro Exh. A; emphasis added):

> We have carefully reviewed the Amazon listings by the below-referenced sellers and have made a determination that these items are counterfeits and/or have violated copyright laws based on an analysis of the pictures provided by the seller, the listing details, and the sellers having been identified as having profiles consistent with infringement.
> []
> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."
> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

Plaintiff has previously provided Incopro with copies of her retail receipts for the Bella FINGERLINGS product that she offered for sale on Amazon. Those receipts are attached as Surf Shack Exhibit A.

Because they were genuine products, it is not an infringement of the trademark to use the mark in marketing those goods. See *Restatement 3rd Unfair Competition*, §24 (June 2009)("One is not subject to liability under the rule stated in § 20 for using another's trademark, trade name, collective mark, or certification mark in marketing genuine goods or services the source, sponsorship, or certification of which is accurately identified by the mark . . .")

2

Incopro does not challenge the fact that its allegations did <u>not</u> include a test buy or actual inspection of the product it listed next to plaintiff's name (or the two products that Amazon was identified as selling).

Incopro's email complaint and its brief also do not provide any information or evidence that plaintiff's seller profile is "consistent with infringement" is also an affirmative representation of fact rather than opinion. This leaves little room for asserting that the words used are "not reasonably capable" of a defamatory meaning either literally or by innuendo. In fact, plaintiff has an excellent seller reputation on Amazon. <u>Surf Shack Exhibit B</u>.

In the present case, the language of the Incopro email is literally susceptible of only three possibilities: (1) the products are counterfeits, (2) the products are counterfeits and The Little Surf Shack committed copyright infringement, and (3) The Little Surf Shack committed copyright infringement. All of these statements are affirmative statements of fact that are false (and defamatory), and two of the three accuse plaintiff of selling a counterfeit product (defamatory *per se*).

Incopro has also not provided the court with any proposal for how its statements should be construed. Such an omission is telling.

"In determining whether words and statements complained of in the case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." *Spirito v. Peninsula Airport Comm'n*, 2018 WL

3

6075489 *7 (E.D. Va 2018) citing *Webb v. Virginian-Pilot Media Cos., LLC*, 752 S.E.2d 808, 811 (Va. 2014).

We know how Amazon construed the Incopro email complaint. In its published Best Practices for rights owners, Amazon tells the rights owner in advance that it acts on only the first listed type of IP issue. (McCabe declaration ¶20; McCabe Exhibit 6 at 2-3). In this case, that issue is an accusation of selling counterfeit products: "these items are counterfeits." (Incopro Exh. A.)

We also know that counsel for WowWee thought the complaint was referring to counterfeit products in her call to Virginia and refusal to retract the Incopro email complaint when faced with evidence that it was wrong. (See Surf Shack Exhibit C.)

Even the vague reference to copyright infringement is false because Incopro has not shown that plaintiff created the product detail page that inserted the product image of the Bella FINGERLING.

## II.   The Incopro Email is Not Privileged

Absolute privilege is generally construed very narrowly. *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144 (2003)("We have often recognized that statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth.")

Incopro seeks to equate a pre-litigation communication of a pleading to a named defendant (as in *Mansfield*) with its private email communication to private, nonparty Amazon. (Incopro Brief at 7-8.) Such an extension is

4

unwarranted and contrary to the prior, controlling, decisions that addressed the issue.

*Mansfield v. Bernabel*, 727 S.E.2d 69, 74 (Va. 2012) involved a draft complaint sent to a collection of defendants. The question was whether such pre-litigation communications to probable parties was protected. The Court held that they were protected because the only recipients were the probable defendants:

> The Restatement approach facilitates the legitimate investigation and settlement of claims. The countervailing legitimate concern we expressed in *Lindeman,* that extension of absolute privilege to pre-filing communications may prompt defamatory statements without meaningful restraint, is addressed by the Restatement requirements that the proposed judicial proceeding must be contemplated in good faith and under serious consideration, and the communication must relate to that anticipated proceeding. The concern may be further alleviated by limiting the absolute privilege to disclosures made to persons with an interest in the proposed proceeding. Thus, regarding the applicability of absolute privilege to communications preliminary to a proposed judicial proceeding, this Court adopts the rule expressed in the Restatement (Second) of Torts §§ 586, 587 as well as the additional requirement that the disclosure be made only to interested persons.

*Mansfield v. Bernabei*, 727 S.E.2d 69, 75 (2012)

The term "interested persons" does not encompass false complaints sent to Amazon:

> Though the Supreme Court of Virginia has not yet defined the term 'interested person' in this context, the nature of settlement discussions is such that it could only refer to those whose rights may be affected by the litigation. In other words, the term does not implicate communications with bystanders whose interests are those of spectators to the lawsuit, but only those with a justiciable interest in the litigation. If 'interested person' was as broadly defined as Plaintiffs propose, then a litigant could defame the opposition with impunity simply by carbon copying a news reporter interested in writing a story about the case. Such an absurd result

5

would negate the purposes of common law defamation and the standards governing the attendant immunities.

*Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 823 (E.D. Va. 2013)(citations omitted).

Communications between private parties are not shielded from scrutiny for defamation:

> [A]t least one court has found that the *Noerr–Pennington* doctrine shields from liability parties who initiate arbitration proceedings against other private parties. *See Oneida Tribe of Indians of Wis. v. Harms,* No. 05–C–0177, 2005 WL 2758038, at *3 (E.D.Wis. Oct. 24, 2005). The Court finds, however, that the better-reasoned view is that the *Noerr–Pennington* doctrine does not provide such immunity to private parties initiating private arbitration proceedings.

*Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 862, 866–67 (E.D. Va. 2013).

> As explained in *Ford Motor Co.* by Judge Payne at 868-869:
>
> The institution of private arbitration before a private organization does not implicate the First Amendment's prohibition against establishing laws that abridge "the right of the people ... to petition the Government for a redress of grievances" for the threshold reason that the arbitration here does not petition the Government at all. The decision in *Oneida Tribe* offers no support for the notion that the filing of a private arbitration petition somehow constitutes petitioning the Government. In fact, *Oneida Tribe* simply assumes that to be the case. But, that assumption runs counter to the clear language used by the Founders to establish protection for petitioning the Government, an entirely different kind of activity than instituting proceedings in a non-governmental forum.
> []
> Indeed, a private arbitration arrangement is the antithesis of the very public rights that *Noerr–Pennington* seeks to protect. The very purpose of private arbitration is to allow parties to resolve their disputes by an agreed method rather than through the public forum of the government-operated courts. Congress has approved this private mechanism and persons entering into contracts are free to agree to arbitrate. But, the fact that Congress allows private

6

contracts does not convert those private contracts into public fora. Parties have chosen to leave the public avenues for redress and compensation and rely on private mechanisms. It would be presumptuous of this Court to now endow such a private mechanism with the cloak of the government.

Incopro relies on a district court decision from the District of Washington (*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 2014 WL 6452173 (W.D. Wash. 2014)) and a nonprecedential opinion from the 9th Circuit (*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 Fed.Appx. 406, 407 (9th Cir. 2017)(Fed.R.App.P. 32.1)) in support of its assertion that notices to Amazon are deserving of *Noerr-Pennington* immunity. (See Incopro Brief at 8.) [2]

When one digs further into the cited *Hard2Find* case, the facts show that the seller accused by Apple of selling counterfeit products had submitted evidence of a history of selling counterfeit products and was, therefore, on notice that Apple's complaint was not baseless. The pleadings also failed to assert that the complaint filing was a sham. See *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 Fed.Appx. at 407 ("H2F's complaint included customer complaints regarding the authenticity of H2F's products, which could support Apple's trademark infringement and counterfeiting concerns, and therefore Apple's notice to Amazon was not baseless.")

---

[2] It is not entirely clear that Washington law should be controlling or even relevant in the present case. Amazon has Seller Performance teams located all over the world (McCabe Declaration at ¶8.) Incopro has not presented any evidence where the last acts of defamation or tortious interference occurred.

7

No such evidence exists in the current case. The accused seller in this case has an excellent record of customer satisfaction. (Surf Shack Exhibit B.)

Curiously, the cited Washington district court did not cite or reconcile its decision in Hard2Find with its prior decision in *Experience Hendrix, LLC v. HendrixLicensing.com*, 766 F.Supp.2d 1122, 1146 (W.D. Wash. 2011)("Communications with non-litigants outside the context of discovery requests or trial logistics generally do not advance the proceedings or relate to the 'redress of grievances.' Thus, the exercise of the right to petition would not be unduly hampered by holding parties to an ethical standard in their dealings with nonparties. To decide otherwise would provide carte blanche to engage in a host of business torts veiled as 'petitioning conduct.' Such result could not have been contemplated when the *Noerr–Pennington* doctrine was conceived.")

Incopro has also presented no evidence or even arguments that an Amazon dispute has any of the same processes and safeguards as a judicial proceeding so as to warrant the extension it asserts, e.g., Amazon has no formal proceedings, no published procedures, no truth-seeking activities before a judge or magistrate, and no compliance with the Rules of Evidence and Civil Procedure. Amazon's dispute system is very different and in no way similar to a judicial proceeding. See McCabe Declaration at ¶¶ 9-13. The complainant receives immediate relief without an adjudication or investigation- this is the antithesis of a proceeding that seeks to find the truth of a conflict.

8

Amazon's takedown system for any IP allegation, regardless of merit, has resulted in growing abuses by brands and competitors from false allegations that are treated as true without investigation. (McCabe declaration ¶¶ 14-18.)

Importantly, the allegations by Incopro were made "under penalty of perjury." How does this get enforced if not by a court? This court should not allow this important representation to become hollow and without consequence.

In any event, "[a]lthough it is well-established that *Noerr–Pennington* immunity applies to adjudicatory proceedings, the doctrine does not protect sham litigation. Sham litigation must be objectively frivolous or meritless and must originate from a litigant's subjective motivation to interfere directly with business relationships of a competitor through the litigation." *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 393 (E.D. Va. 2002).

Nonetheless, the Second Amended Complaint does plead that the Incopro email was a sham. (See Dkt 29, Exh. A at ¶¶ 24-35.) The sheer number of named sellers (344) and unique products (50) should suggest to the court that Incopro did not verify its counterfeit allegations with an inspection of all 766 listings. (Incopro Exh. A; Dkt 29, Exh. A ¶¶29-30.)

The cases cited by Incopro at pp. 7-10 of its brief in support of its arguments for establishing a new form of protected communication that was free from judicial scrutiny despite false and defamatory allegations of fact are

9

distinguishable and do not establish that Incopro is entitled to even a qualified privilege for its false allegations:

- *Smalls v. Wright,* 399 S.E.2d 805 (Va. 1991) involved a letter sent to the chief of police (a public official) accusing the plaintiff officer of lying in court (a privileged judicial forum). Amazon is not a public official or a judicial forum.

- *H.E. Crawford, Co. v. Dun & Bradstreet, Inc.*, 241 F.2d 387, 393 (4th Cir. 1957) involved allegations of a credit report that contained an incorrect report of the results of a pending lawsuit involving plaintiff that was published by Dun & Bradstreet to its subscribers who requested information. The court applied North Carolina law. *Goforth v. Avemco Life Ins. Co. of Silver Spring, Md.*, 368 F.2d 25, 31 (4th Cir. 1966). The US Code grants a qualified immunity to statements made in a credit report. 15 USC §1681h(e). Neither applies here.

- *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724 (N.D. Cal. 2018), reconsideration denied, No. 17-CV-00079-EMC, 2018 WL 620121 (N.D. Cal. Jan. 30, 2018) did not involve Amazon at all. The case involved a letter sent by Fitbit to Groupon informing Groupon that a number of defective products intended for scrap disposal had been stolen and were being sold on Groupon. The case involved the language of the California Anti-SLAPP statute and the right to petition in the context of a lawsuit FitBit filed to recover for the items. The court allowed the impliedly accused seller, L2, to maintain their counterclaim but granted the motion to strike the counterclaims of the

10

unnamed upstream sellers from whom L2 may have purchased the product. See *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *8 (N.D. Cal. Jan. 5, 2018) Accordingly, with respect to Fitbit's letter to Groupon regarding "stolen" goods, the Court denies Fitbit's motion to strike the L2 Defendants' libel and related state counterclaims but grants the motions to strike Cali's libel and related state counterclaims.")

- In *Sarno v. Clanton*, 59 Va. Cir. 384 (2002), the court held that "When an employer discusses the character of its employee with its employee's potential employers he is protected by a qualified privilege if such a conversation is made in good faith and if the statements are not made with malice." The court further noted that "Common law malice exists in five different instances. First, the defendant acts with malice when he makes a statement that he knows was false <u>or when he makes a statement with reckless disregard for the truth</u>. *Smalls v. Wright*, 241 Va. 52, 55 (1991). . . . The plaintiff can overcome the privilege if she proves by clear and convincing evidence that one of the five factors exists." *Id.*

In the present case, defendant accused plaintiff of selling counterfeit goods without an inspection of those goods or a history of such sales. No evidentiary support has been cited, and no evidence exists, that substantiates Incopro's allegations. As such, these acts were made in reckless disregard of the truth.

When faced with evidence that they were false, defendants Incopro, WowWee, and Sands maintained their refusal to withdraw the Incopro email

11

complaint as to plaintiff with full knowledge that their actions were based on error. Such a refusal reflects actual malice and bad faith. See *Williams v. Garraghty*, 249 Va. 224, 236, 455 S.E.2d 209, 217 (1995)("The trial court instructed the jury that it could award Garraghty punitive damages, in addition to compensatory damages, if it believed by clear and convincing evidence that [Williams] made the statements with actual malice; that is, she knew they were false or she made them so recklessly as to amount to a willful disregard for the truth. This was a correct statement of the law."

Incopro's request for the freedom to make false and unsupported allegations to Amazon under the guise of a counterfeit products allegation should be denied as contrary to law, unsupported by public policy, and a plain bad idea.

### III.   The Tortious Interference Claim, as Amended, Is Proper

In the Second Amended Complaint, plaintiff has made clearer the factual basis for its claims of defamation (Counts I and II) as well as the alleged additional facts that bolster the basis for its tortious interference claim (Count III). As is apparent from the Second Amended Complaint, defendants submitted the false allegations of counterfeit sales in the Incopro email with the intent and successful expectation of receiving an immediate and summary impact on plaintiff's relationship with Amazon and her ability to resell even genuine FINGERLINGS products. When faced with evidence that the allegations were false, defendants WowWee and its agent, Sands, doubled down and knowingly refused to retract the false allegations despite

12

the harm caused to plaintiff and her relationship with Amazon. This is an actionable claim that should be allowed its day in court.

### IV. Conclusion

For the reasons presented above, Incopro's 12(b)(6) motion should be denied. Its false communications to Amazon should not be shielded from review, and the Second Amended Complaint accounts for the discovery of the Incopro email and states claims for relief.

Dated: January 10, 2019                    Respectfully submitted,

**Johnson Legal PLLC**

/s/ Lance G. Johnson
Lance G. Johnson, #27,929
12545 White Drive
Fairfax, Virginia 22030
Tel: 202-445-2000
Fax: 888-492-1303
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on 10 January 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Lance G. Johnson*