IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

CYNTHIA JOHNSON
dba The Little Surf Shack

Plaintiff,

Case No. 1:18-cv-00689-LMB-TCB

v.

JOHN DOE(S)

Defendants.

## DECLARATION OF CHRIS MCCABE

Under penalty of perjury, I hereby state and declare the following:

1. I was an employee of Amazon.com, Inc. from November 2006 until June 2012 where I evaluated seller account performance and enforced Amazon's policies. After leaving Amazon, I became a consultant and launched ecommerceChris where I teach sellers how to think like Amazon, protect their accounts, and appeal listing restrictions and suspensions.

2. At Amazon, I initially held the position of Claims Investigator on Buyer Protection teams and then transitioned to Investigation Specialist, Level Two, Merchant Risk Investigation. I was later promoted up a level where I trained investigators and audited the quality of their investigations. In these roles, I worked extensively within Amazon's procedures to investigate buyer refund claims and achieve fair and accurate resolutions, verify merchant compliance with prevailing laws and policies, establish advanced fraud protection, implement risk assessments on high-volume merchants

showing deficiencies, and, when necessary, implement account restrictions or limited disbursement access to enforce compliance.

3. I have owned and operated my business as an Ecommerce Consultant since August 2014 using my intimate knowledge of internal Amazon teams to help sellers think like Amazon investigators do, to protect their accounts, and continue to sell on Amazon. My company helps sellers address Amazon Marketplace abuse, manipulation, fraud, account closures, funds holds, IP violations, buyer-seller disputes, feedback, authenticity and compliance with Amazon's quality standards. We offer services that include account protection, full account audits, performance metric assessment and recommendations for improvements, seller support case creation and follow ups, quality warning handling, listing hijacking avoidance, and counterfeit product reporting.

4. I am knowledgeable about the processes used to create product detail pages ("listings") and the policies that Amazon has in place to ensure an orderly collection and presentation of product offerings.

5. Amazon has published a detailed set of rules for its product detail pages. See, McCabe Exhibit 1. For example, product detail pages can be created that link the product to its universal product code (UPC) typically the bar code and numbers printed on the product package.

6. Once a product detail page exists for an item, other sellers who have that same item to sell are prohibited from creating a different product

detail page for the same product. This rule is embodied in Amazon's ASIN Creation Policy (McCabe Exhibit 2).

7.  I am knowledgeable about the procedures in place at Amazon for handling counterfeit and IP violation complaints received from owners of patents, trademarks, and copyrights.

8.  Amazon handles a great number of IP infringement notices on any given day. To handle and review these notices for completeness, Amazon directs that work to its Notice teams in the Merchant Risk Investigation team who can be located anywhere in the world at an Amazon office attached to its worldwide network. It would not be unusual that a team in India would receive and process and IP infringement notice received from a rights owner in the US.

9.  The Notice team folks who receive and review infringement notices tend to handle each very quickly. They typically handle several investigations per hour and are rated partially based on the speed with which they can process notices.

10. Amazon's Notice teams long ago got away from simple warnings and listing removals when they receive claims of infringement. Given the extreme number of Notice claims they receive every hour, both legitimate and false claims often lead to fast processing with aggressive enforcement actions. These enforcement actions often occur without input from the accused seller. We've come to expect this as a fact of life for resellers.

11.     Sellers who have been wrongly accused have Amazon's Notice-Dispute process to redeem their accounts. This Notice-Dispute system is very different than a lawsuit before a court. It does not have a formal, published set of operating procedures. The reseller cannot confront her accuser before an Amazon magistrate and cross examine them on their accusations and evidence. Despite its internal procedures, the accuser does not even necessarily need to provide evidence of a test buy for a seller to be blocked from a listing. Often, the allegation itself sufficient. Amazon is not governed by the Federal Rules of Evidence.

12.     Now more than ever, brands and their designated compliance agents seem ready to do whatever they can to limit who can sell their items on Amazon.

13.     Whenever there's a dispute between a brand owner and resellers, Amazon won't mediate or interfere unless the claim can be disputed and proven to be false. Every other claim whether it relates to patent, trademark, or copyright must be resolved by the reseller to Amazon's satisfaction. That means the seller must obtain a retraction from the rights owner (or their agent) and have the rights owner contact Amazon directly to withdraw the claim against the seller.

14.     Amazon's policy of abstaining from mediating legal conflict as it pertains to IP disputes has led to a growing rate of abuses that harm sellers and reduce faith in the integrity of the Marketplace. We've seen a lot of sellers

accused of selling counterfeits who have sourced the items from authorized distributors.

15. I wrote an updated article on this issue for WebRetailer.com on April 11, 2018 entitled "False Claims of Infringement are Rife on Amazon, 2nd edition" (McCabe Exhibit 3). In that article, I note that IP abuses are on the rise because Amazon does not independently verify that the information on the form is correct. The Amazon investigators merely check the form to make sure that the right content is in the right places then they take down the named product listings and send off the seller notifications. The rest is up to the seller, even if the submitted information is incorrect or false, unless a court compels Amazon to act.

16. The net effect of Amazon's policy of non-mediation undermines a seller's sense of legal protection or faith that they will be treated fairly.

17. Another effect of Amazon's lack of intervention is that false claims of IP infringement and counterfeit products can be filed by anyone alleging infringement of their rights ownership. The product listing is taken down from the Marketplace and the seller's account tarnished with the allegations with the immediate need to disprove the false allegations.

18. My article (McCabe Exhibit 3) notes the increasing use of false IP complaints by competitors to harm their competition for sales of a product. The article on the Brushes4Less case (McCabe Exhibit 4) reports that someone created a fake law firm and successfully persuaded Amazon to take down a listing just before its Prime Day event costing the company $200,000

in lost sales. The Verge article in McCabe Exhibit 5 details another way bad actors can abuse Amazon's well-meaning rules and fraud detection systems against competitors with no consequences, unless there's a seller account that can be suspended because it filed false Notice claims.

19.  On its website, Amazon publishes a document titled "Intellectual Property for Rights Owners." A true and accurate copy is attached hereto as McCabe Exhibit 6. This document contains instructions for the required content of an IP infringement notice and how Amazon will respond to such notices.

20.  One very important set of information in Exhibit 6 is found under the heading "Best Practices" (Exh. 6, pp. 2-3) where Amazon directs that only one type of IP infringement should be submitted per notice (Exh. 6, p. 2 bottom). If more than one type of issue is presented, Amazon may act on only the first listed issue. Separate notices must be filed for the other issues (Exh. 6, p. 3 top).

21.  Amazon often cannot interpret the intent or desires of the notice submitter in a notice that contains more than one type of infringement issue.

Dated: January 10, 2019

*Chris McCabe*
Chris McCabe (Jan 10, 2019)
Chris McCabe