IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CYNTHIA JOHNSON<br>dba The Little Surf Shack<br><br>Plaintiff,<br><br>v.<br><br>ASHLY E. SANDS,<br><br>INCOPRO INC.,<br>a Delaware Corporation<br><br>WOWWEE USA, INC.<br>a Delaware Corporation | Case No. 1:18-cv-00689-LMB-TCB |

## RESPONSE TO SANDS MOTION TO DISMISS

Defendant Sands has moved to dismiss the complaint against her on arguments of: (a) a lack of personal jurisdiction (FRCP 12(b)(2)), (b) failure to state a claim against her in the First Amended Complaint (FRCP 12(b)(6)), and (c) on the basis of assertions of an absolute privilege (i.e., futility).

Pending before the court is plaintiff's motion for leave to file a second amended complaint (Dkt. 29). The Second Amended complaint incorporates the actual text of the defamatory Incopro email complaint that was sent to Amazon by Incopro. This document does not show that Ms. Sands was involved with its

drafting or publication so the proffered pleadings have been revised to remove Ms. Sands from the defamation counts I and II.

Ms. Sands has been named as a co-defendant for the tortious interference count III due to her actions in voluntary calling plaintiff in Virginia and refusing in that call to withdraw the Incopro email complaint as to plaintiff despite evidence that plaintiff was wrongly named in that complaint. The refusal to withdraw and mitigate was done with full knowledge of the error in the Incopro email complaint (i.e., constitutional malice) and the continuing harm it would have for plaintiff's business relationship with Amazon.

## I. This Court May Have Jurisdiction Over Sands But Jurisdictional Discovery Is Needed

In *Calder v. Jones*, 465 U.S. 783 (1984) the Court held that that it was proper for a court in California to exercise jurisdiction over two Florida newspapermen in a libel action arising out of their intentional conduct in Florida which was allegedly calculated to cause injuries to plaintiff in California. The Court was clear that "a lack of contacts will not defeat otherwise proper jurisdiction but they may be so manifold as to permit jurisdiction when it would not exist in their absence. Here, the plaintiff is the focus of the activities of the defendants out of which the suit arises." *Id.* at 788.

As the Court explained (*Id.* at 789-790):

> Whatever the status of their hypothetical welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact

upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

Because the plaintiff is a resident of Virginia and the harm brunt of the injuries are felt in Virginia, the state has an interest in having the case heard in Virginia. See *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 473 (1985)("A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.") See also *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 374-375 (4th Cir. 1985) (parallel citations omitted):

> Another factor which favors the exercise of jurisdiction over Veribanc is the interest of Virginia in the action. Blue Ridge is a local bank, and the brunt of the alleged injuries to Blue Ridge occurred in Virginia. See Calder v. Jones, 465 U.S. 783 (1984); Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984). In *Keeton*, the Supreme Court recognized the interests of the state in protecting out-of-state plaintiffs from the tort of libel. These interests are more significant here because Blue Ridge is a local bank.

In this case, Defendant Sands initiated the phone call into Virginia and issued the key business decision in that call that refused retraction of the defamatory Incopro email and allowed its harm to continue without mitigation.

(See VA Code § 8.01-46: "in any action for defamation, the defendant may…give in evidence, in mitigation of damages, that he made or offered an apology to the plaintiff for such defamation….") Plaintiff's claim against Ms. Sands arose out of her call to Virginia and her refusal in that call, as an agent of WowWee, to retract the complaint against plaintiff and mitigate its ongoing harm to plaintiff's relationship with Amazon. Before that call, plaintiff had never heard of Ms. Sands. Plaintiff sought to communicate only with Incopro at the email address provided to Amazon.

"Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King* at 475.

Considering the circumstances, a single call to the jurisdiction that caused the claim to arise may be enough to establish jurisdiction if the tortious act occurred in that call. As explained by *Burger King* at 476-477 (citations omitted):

> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. Thus courts in appropriate cases may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. These considerations sometimes serve to establish the reasonableness of jurisdiction

upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

The "single publication rule" favors the presence of Defendant Sands in this proceeding for the efficient litigation of all claims and issues arising out of the libel made by Incopro and perpetuated by Sands:

> New Hampshire also has a substantial interest in cooperating with other States, through the "single publication rule," to provide a forum for efficiently litigating all issues and damage claims arising out of a libel in a unitary proceeding.[8] This rule reduces the potential serious drain of libel cases on judicial resources. It also serves to protect defendants from harassment resulting from multiple suits. Restatement (Second) of Torts § 577A, comment f (1977). In sum, the combination of New Hampshire's interest in redressing injuries that occur within the State and its interest in cooperating with other States in the application of the "single publication rule" demonstrate the propriety of requiring respondent to answer to a multistate libel action in New Hampshire.
>
> n8: The great majority of the States now follow the "single publication rule." Restatement (Second) of Torts § 577A, Reporter's Note.

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777–78 (1984).

Another basis for jurisdiction may be VA Code § 8.01-328.1(A)(3) and the jurisprudence developed as to its contours. As discussed in TELCO Commns. v. An Apple A Day, 977 F.Supp. 404, 407 (E.D. Va. 1997):

> Subsection (3) permits personal jurisdiction over a person who causes "tortious injury by an act or omission in this Commonwealth." Generally, courts have held that this subsection required that the defendant be personally physically present in Virginia when causing the

injury. However, courts have been moving away from that requirement. Most notably, in *Krantz v. Air Line Pilots Assoc., Int'l,* 245 Va. 202 (1993), the Supreme Court of Virginia examined whether subsection (3) was satisfied by a defendant who, acting entirely in New York, accessed a computer "bulletin board" in Virginia and allegedly tortiously interfered with the plaintiff's contract. The Court held that, because "some further act [beyond the defendant's acts in New York] was required in [Virginia] to complete [the defendant's] act of tortiously interfering with [the Plaintiff's] prospective contract," subsection (3) was satisfied. According to the court, "[w]ithout use of ... a Virginia facility, ... there would have been no interference with [the plaintiffs'] prospective contract, the third element for a prima facie showing of this tort."

At present, plaintiff does not have sufficient information regarding the business of defendant Sands and her possible relationships with Virginia to find the "further act" required by *Krantz*. Such information would inform as to whether jurisdiction lies under one or more of the provisions of VA Code § 8.01-328.1.

Accordingly, Plaintiff seeks leave to conduct discovery of Ms. Sands limited to jurisdictional issues. If there are no "further acts" to warrant personal jurisdiction, she will be dismissed from the case.

## II. The Second Amended Complaint Pleads a Plausible Claim Against Sands for Tortious Interference

Sands asserts that the law of New York applies to the tortious interference claim made against her. She does not try to reconcile how this law is more applicable than the law where WowWee USA and Incopro are incorporated (Delaware), where Incopro prepared the false allegations and submitted them with the intent of affecting plaintiff's business relationship

with Amazon (Idaho), where WowWee makes its corporate decisions (California), or here in Virginia where the court sits.

Assuming that New York law is applicable, "The required elements of a cause of action for tortious interference with prospective business relations are as follows: (a) business relations with a third party; (b) the defendant's interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship. *Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776, 779, 836 N.Y.S.2d 807, 809–10 (Sup. Ct.), aff'd as modified, 44 A.D.3d 317, 843 N.Y.S.2d 220 (2007).

New York is not materially different than Virginia's required elements:

> In order to establish a prima facie case for tortious interference with prospective economic opportunity, Plaintiff must prove (1) existence of a valid business expectancy, with a probability of future economic benefit to plaintiff, (2) defendant's knowledge of the expectancy, (3) a reasonable certainty that absent the defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy, and (4) damage to the plaintiff.

*Morris v. Massingill*, 61 Va. Cir. 532 (2002).

The Second Amended Complaint contains the required pleadings whether New York or Virginia law is applied. The existence of the business relationship and plaintiff would have been apparent from plaintiff's identification as an authorized seller. See Dkt. 29, Exh. A at ¶ 48 (As a seller, plaintiff operating under the Amazon Seller's Agreement).

WowWee sought to interfere with an injure that business relationship with Incopro's false and unsupported email complaint to affect her ability to resell FINGERLINGS toys on Amazon. (Dkt. 29 Exh. A at ¶¶ 24-30 and 38-45.)

Sands, on her own or as an agent of WowWee was informed that the allegations were false and was offered proof of the falsity so as to give rise to an obligation to mitigate the ongoing harm of the false allegations. and they had the authority to retract the false complaint as to plaintiff but refused and allowed the interference to continue. (Dkt. 29, Exh. A at ¶¶ 64-76.)

Plaintiff's relationship with Amazon has been harmed. See, Dkt. 29, Exh. A at ¶¶ 85-95.

### III. The Sands Call Is Not Privileged

Sands asserts that her communications with plaintiff's counsel are privileged pre-litigation communications. (Sands Brief at 18.) The law and standards for an absolute privilege are addressed in plaintiff's response to Incopro's 12(b)(6) motion at pp. 4-12.

These arguments appear in a section directed to whether the complaint asserted claims for defamation against Sands. As noted above, in the Second Amended Complaint, Sands is not named as liable for the defamatory actions that were apparently undertaken by Incopro and WowWee. Accordingly, the claim of absolute privilege is moot.

## IV. Conclusion

For the reasons noted above, plaintiff has insufficient information regarding the contacts between defendant Sands and Virginia. Plaintiff thus asks for leave to conduct discovery limited to the issue of jurisdiction. The remainder of the arguments made in the Sands motion are moot and addressed by the Second Amended Complaint.

Dated: January 11, 2019                                  Respectfully submitted,

**Johnson Legal PLLC**

/s/ Lance G. Johnson

Lance G. Johnson, #27,929
12545 White Drive
Fairfax, Virginia 22030
Tel: 202-445-2000
Fax: 888-492-1303
*Attorney for Plaintiff*