1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
CYNTHIA JOHNSON, doing         .   Civil Action No. 1:18cv689
business as The Little Surf    .
Shack,                         .
                               .
         Plaintiff,            .
                               .
    vs.                        .   Alexandria, Virginia
                               .   January 18, 2019
ASHLY E. SANDS; INCOPRO, INC.,.    10:40 a.m.
a Delaware Corporation; and    .
WOWWEE USA, INC.; a Delaware   .
Corporation,                   .
                               .
         Defendants.           .
                               .
. . . . . . . . . . .
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              LANCE G. JOHNSON, ESQ.
                                Johnson Legal PLLC
                                12545 White Drive
                                Fairfax, VA 22030

FOR DEFENDANT ASHLY E.          EVE GRANDIS CAMPBELL, ESQ.
   SANDS:                       O'Hagan Meyer PLLC
                                411 East Franklin Street
                                Suite 500
                                Richmond, VA 23219

FOR DEFENDANT INCOPRO, INC.:    JAY W. BROWN, ESQ.
                                PAUL J. SAFIER, ESQ.
                                Ballard Spahr LLP
                                1909 K Street, N.W.
                                12th Floor
                                Washington, D.C. 20006

(APPEARANCES CONT'D. ON PAGE 2)

(Pages 1 - 16)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1   APPEARANCES:  (Cont'd.)

 2   FOR DEFENDANT WOWWEE             CARTER T. KEENEY, ESQ.
         USA, INC.:                   Carter & Shands PC
 3                                    9030 Stony Point Parkway
                                      Suite 530
 4                                    Richmond, VA 23235

 5   OFFICIAL COURT REPORTER:         ANNELIESE J. THOMSON, RDR, CRR
                                      U.S. District Court, Third Floor
 6                                    401 Courthouse Square
                                      Alexandria, VA 22314
 7                                    (703)299-8595

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  Civil Action 18-689, Cynthia Johnson v.
 3   John Does, et al.  Would counsel please note their appearances
 4   for the record.
 5           MR. JOHNSON:  Lance Johnson, counsel for plaintiff,
 6   Your Honor.
 7           THE COURT:  Good morning.
 8           MR. BROWN:  Good morning, Your Honor.  Jay Brown for
 9   defendant Incopro; and, Your Honor, I have with me my
10   colleague, Paul Safier, whose motion for admission pro hac vice
11   has been granted by the Court; and I would ask the Court to
12   hear from Mr. Safier on Incopro's behalf.
13           THE COURT:  All right, that's fine.  Good morning.
14           MR. SAFIER:  Good morning, Your Honor.
15           THE COURT:  And for WowWee?
16           MR. KEENEY:  Good morning, Your Honor.  I'm Carter
17   Keeney here on behalf of WowWee USA, Inc.
18           THE COURT:  All right.  And lastly, for Ms. Sands?
19           MS. CAMPBELL:  Yes, ma'am.  Eve Campbell on behalf of
20   Ashly Sands.
21           THE COURT:  All right.  Well, before the Court today
22   are the motions of the defendants to dismiss.  Now, we have in
23   the court now the second amended complaint, so that is the
24   operative complaint, and my understanding is the defense were
25   satisfied that their present motions to dismiss were adequate,
```

1  because this is the -- I'm deeming those to be motions to
2  dismiss the second amended complaint so there's no question
3  about that.
4        And I want to take up Ms. Sands' motion first because
5  that's a motion addressing the issue, I think, primarily of
6  personal jurisdiction.  Mr. Johnson, I don't think you have
7  personal jurisdiction over this defendant.  My understanding,
8  unless you have any other evidence, is that Ms. Sands is an
9  attorney who is licensed and practices in New York.  As far as
10 I know from the record, she's had one case in the Eastern
11 District of Virginia, and that was in Richmond, and I think she
12 was pro hac in that case.
13       She's not admitted to practice in Virginia as far as
14 we can tell from the record, and the only contacts that she's
15 had related to this case were as a result of contacts initiated
16 from the plaintiff on behalf of the plaintiff from Virginia
17 into New York.  It's not as if she was contacting you sua
18 sponte.
19       Do you have any other evidence of personal contacts
20 between Ms. Sands and this jurisdiction that would support
21 personal jurisdiction?
22       MR. JOHNSON:  As a point of clarification, Your
23 Honor, the response e-mail was to Incopro.  We didn't know
24 Ms. Sands existed.
25       THE COURT:  I'm sorry, okay.

1          MR. JOHNSON:  Ms. Sands then called to Virginia.
2   That was the first contact I had with her -- or that the
3   plaintiff had with her.  I have no other information at this
4   point about her contacts in Virginia.  I know she's involved
5   with an enforcement action for counterfeit Fingerlings products
6   in Richmond.  I do not know if that case arose out of this same
7   complaint to Amazon.
8          I am somewhat reluctant to suggest that a pro hac
9   admission would be sufficient, but at this point, without
10  additional jurisdictional discovery, I have no additional
11  facts.  As I mentioned under the *Telco* case, there is some
12  leeway about minimum contacts, but the further contact or the
13  further touch in Virginia that was required by that case, at
14  this point I do not have that evidence, and I would require
15  jurisdictional discovery in order to find it.
16         THE COURT:  Well, the Fourth Circuit has -- recently
17  actually has a case where -- involving one of my cases, talks
18  about the right of a plaintiff to take limited jurisdictional
19  discovery on the issue of personal jurisdiction.  In the last
20  case that I had involving that, where I was pretty satisfied
21  based on the record that's before -- that was before me that
22  there really was no basis to continue to pursue the issue, I
23  did allow that plaintiff to have brief jurisdictional
24  discovery.  However, I warned the plaintiff, because I didn't
25  think it really was going to pan out, that if at the end of the

1  discovery they were unsuccessful in showing that there was any
2  basis for personal jurisdiction, the costs which the defendant
3  had to incur in that discovery would be -- have to be paid by
4  the plaintiff, all right?
5              In other words, basically it forces a plaintiff to
6  think -- or plaintiff's counsel to think wisely about whether
7  it's worth pursuing personal jurisdiction discovery.  And so
8  I'm going to impose that same ruling in this case; that is, the
9  motion to dismiss for failure to establish personal
10 jurisdiction within the complaint will be denied without
11 prejudice.
12             If the -- and I will allow the plaintiff brief
13 jurisdictional discovery as to Ms. Sands.  If you choose to go
14 that route and you are unsuccessful in developing evidence that
15 results in the Court finding personal jurisdiction, then the
16 expense which Ms. Sands will have to incur in terms of, you
17 know, having an attorney respond to discovery, etc., you and
18 your client will have to cover.
19             Do you understand that?
20             MR. JOHNSON:  I do.
21             THE COURT:  All right.
22             MR. JOHNSON:  And if agreed to a stipulation of
23 dismissal now, I take it that would avoid that procedure --
24             THE COURT:  That's correct.
25             MR. JOHNSON:  -- and Ms. Sands will be dismissed.

 1            THE COURT:  That is correct.  So I'll give you that
 2   option as well, all right?  All right.
 3            Now, the other two motions that are pending before
 4   the Court both involve 12(b)(6) issues, and they also involve
 5   an interesting issue about litigation privilege.  I've looked
 6   at those papers.  I'm not satisfied on this early -- at this
 7   early point that either of them -- or any of those theories are
 8   sufficient to go forward at this point.
 9            The plaintiff has made, in my view, a very strong
10   preliminary allegation that the claim that the product the
11   plaintiff is selling through Amazon is counterfeit has no
12   factual basis and that Incopro did not conduct any kind of
13   reasonable investigation that would support having made that
14   kind of a representation to Amazon.
15            Although I read your papers and I know you tried to,
16   to indicate that it was counterfeit or infringing, if you look
17   at the totality, at least as I read them, of the information
18   sent to Amazon, that word "counterfeit" is very strong.  I
19   think it's sufficient at this point to make a claim of
20   defamation per se or defamation because when you allege that
21   somebody's product is counterfeit, I mean, frankly, there are
22   criminal statutes that sanction the selling of counterfeit
23   goods.
24            That's a very serious statement to be made unless
25   there's a genuine factual basis that supports that, and so I --

1   at this point, I'm not going to dismiss the claims.

2            This issue about, you know, that there was a

3   privilege because these representations to Amazon were made in

4   anticipation of litigation, again, I'd have to see what the

5   evidence is before I would accept that argument.

6            So I'm going to require that these counts go forward,

7   all three counts.  The tortious interference with contract,

8   there's no question that there's been serious interference

9   between Ms. Johnson's business and Amazon as it's alleged in

10  the complaint.

11           I, frankly, don't understand why this case hasn't

12  settled, and I would be curious since you're all here to hear

13  more specifically from the defendants what your -- I guess it

14  should come from Incopro -- what the real theory is that -- of

15  wrongdoing that you allege the plaintiff has done.  In other

16  words, what are you really claiming is the intellectual

17  property violation that the plaintiff engaged in when she was

18  selling these products on Amazon?

19           Yeah.

20           MR. SAFIER:  Your Honor, my understanding is that at

21  the end of the day, the accusation is one of copyright

22  infringement.

23           THE COURT:  I don't think it's that.  The language

24  says "counterfeit."  That's the first word in that statement.

25           MR. SAFIER:  Right.  And what I was meaning to say

1   was as -- if this case goes discovery, that's what it will
2   show.
3           Now, what you have represented, which I think is
4   fair, is that the word "counterfeit" is sufficiently prominent
5   in the submission to Amazon that that argument doesn't carry
6   the day at the 12(b)(6) stage, which I accept, but I think the
7   absent privilege argument, though, is we sent a demand to
8   Amazon and said to Amazon:  There is infringing material on
9   your website.  Take it down.
10          THE COURT:  Okay.  Tell me, what's the infringing
11  material?
12          MR. SAFIER:  Well, we -- my understanding is what we
13  intended to convey was that it was copyright infringement, but
14  for purposes of the privilege, it doesn't matter.  We were
15  saying to Amazon:  We believe there is material on your website
16  that infringes our intellectual property.  We are making a
17  demand that you take it down.
18          And Amazon, as a party subject to demand letter, made
19  a poor business decision that it would take down the content,
20  and that's exactly what the litigation privilege --
21          THE COURT:  What is the copyright?
22          MR. SAFIER:  I believe it's an image of the specific
23  WowWee toy at issue.
24          THE COURT:  Does WowWee have a copyright of a
25  photograph?

10

1      MR. SAFIER:  I believe they own the copyright to that
2 image, yes.
3      THE COURT:  You believe?  I mean, do you know it as a
4 fact?
5      MR. SAFIER:  That is my understanding of the facts,
6 Your Honor.
7      THE COURT:  So they have -- and why do you believe
8 that it was the plaintiff that put that photograph up on
9 Amazon?
10      MR. SAFIER:  We didn't assert anything as to whether
11 the plaintiff put it up or Amazon put it up.  The demand letter
12 was to Amazon, and my point here is the absolute privilege --
13 litigation privilege applies whether it's counterfeiting or
14 copyright.
15      What you do when you submit a demand letter to a
16 website is you say:  We think there's infringing content on
17 your website.  Investigate it, and decide what to do.
18      Amazon did that, and what they decided to do was take
19 it down.
20      It would be no different than if, you know, we had
21 sent a letter directly to Surf Shack and said:  We think
22 there's infringing content on your website, and they took it
23 down.  That would clearly fall within the litigation privilege,
24 and there's no difference here.  It may feel different because
25 Amazon is this gigantic behemoth that feels this sort of, you

1  know, feels like a third party here, but the demand and
2  complaint was to Amazon about content on the Amazon website,
3  and under *Mansfield*, the Virginia Supreme Court decision, that
4  type of communication is subject to a litigation privilege if
5  it is only distributed to an interested party, which is what
6  happened here.
7          THE COURT:  Well, that may all down the road pan out,
8  but I think without discovery and actually seeing is there, in
9  fact, a copyright for this particular photograph or image that
10 was on the website, I'm not prepared to dismiss these cases --
11 this case at this point.
12         MR. SAFIER:  I appreciate that, Your Honor --
13         THE COURT:  Yeah.
14         MR. SAFIER:  -- but the privilege applies even if
15 it's a counterfeiting complaint.
16         Nothing about whether the privilege applies turns on
17 the complaint we were making.
18         THE COURT:  Well, only if it's a good faith -- if
19 it's a good faith, genuine basis for even claiming that there's
20 potential litigation.
21         And the other thing is, by the way, this issue was
22 raised in Ms. Sands' motion but I don't think WowWee or Incopro
23 raised it explicitly:  There's an interesting issue as to what
24 law is going to apply to this case.  Our preliminary position
25 is, is that most likely Washington law is more appropriate,

1  although it's very similar to Virginia, but I think at some
2  point down the road, we're going to have to be 100 percent in
3  agreement as to what law is applying to this case.
4  　　　　In any case, I don't understand why this case can't
5  be settled.  If, in fact, what I'm told from the complaint, the
6  plaintiff is a legitimate business, who's not selling
7  counterfeit goods, who goes to Walmart and other legitimate,
8  you know, retailers and purchases these items and then offers
9  them on Amazon as a secondary source of the items, as she's
10 represented in her paperwork, why she's being penalized and not
11 able to use Amazon to sell these goods I don't understand.
12 　　　　MR. SAFIER:  Your Honor, that's Amazon's decision,
13 though.
14 　　　　THE COURT:  Well, it's Amazon's decision only -- the
15 only problem is because you-all told Amazon that there was a
16 problem with what the plaintiff's product was -- what was going
17 on.
18 　　　　MR. SAFIER:  But Amazon took our demand letter and
19 investigated the situation and made a business decision about
20 how to handle it.  It's no different than any demand letter to
21 anyone.
22 　　　　I appreciate that if we had sent the demand letter
23 directly to Surf Shack, they would have probably told us to
24 pound sand, and Amazon didn't do that, but that's up to Amazon.
25 Amazon gets to make a decision about how it's going to handle

1  demand letters.
2          And if you look at the *Mansfield* decision, the reason
3  the litigation privilege exists is to keep courts out of
4  settlement negotiations over demand letters.  Maybe Amazon made
5  an unwise decision, maybe they were rash, but it's ultimately
6  Amazon's decision about what to do with content on its website
7  when it receives a demand letter.
8          THE COURT:  All right.  Let me hear from you,
9  Mr. Johnson.
10         MR. JOHNSON:  Your Honor, as we mentioned in the
11 papers, the pre-litigation communications privilege doesn't
12 apply here.  No litigation was ever filed asserting or
13 enforcing even the copyright claim that Incopro asserts,
14 certainly not the counterfeit claim.
15         In the *Mansfield* case, it was an actual pleading.  It
16 was a draft complaint sent to the potential defendant seeking
17 settlement.  It wasn't sent to a third party, and it's not
18 entirely clear -- or it is clear at this point that the Amazon
19 procedures for handling those complaints have nothing to do
20 with litigation.  There is no published proceedings.  There are
21 no published procedures for how to proceed.
22         You know, the representations are presumed to be
23 accurate.  They act on them accordingly in a summary
24 proceeding, and it says if the guilty -- you know, the seller
25 is presumed guilty and must fight to clear its name, and in

1  this case, it required a request to Incopro to, you know,
2  retract the complaint, which they refused.  There's no appeal
3  from that.
4          That's not a litigation, Your Honor.  None of the
5  safeguards associated with litigation are found in the Amazon
6  proceeding, so pre-litigation privilege does not apply.
7          THE COURT:  As I said, I think before we can resolve
8  this case, if you-all can't settle it among yourselves, is that
9  it is appropriate for there to be discovery on these issues as
10 to, you know, what the basis was for filing this case in the
11 first -- this complaint with Amazon in the first place, whether
12 there was ever any intent or plan to sue Amazon if they failed
13 to do it.  I mean, I think that would be relevant to the
14 pre-litigation situation.
15         And whether or not there is actually a real copyright
16 for this photograph, what the photograph was, was it, in fact,
17 a violation, you know, I think what kind of investigation was
18 done by Incopro, and to the extent that, you know, WowWee hires
19 Incopro to do this kind of work for them, I think under the
20 concepts of, you know, respondeat superior, there's enough at
21 this point, again, we're only at the pleading stage, to keep
22 WowWee in the case.
23         So I'm denying without prejudice the remaining
24 defendants' motions to dismiss, and again, as to Ms. Sands, if
25 you're going to take a voluntary dismissal, that's fine.  If

1   you choose to do the option to get discovery, then as I said,
2   you'll have to face the potential for costs if it's not
3   successful.  All right?
4           MR. JOHNSON:  I understand that.
5           THE COURT:  All right.
6           MR. JOHNSON:  And if I might have a few minutes with
7   Ms. Campbell, I can probably resolve the Ms. Sands issue right
8   now.
9           THE COURT:  We'll need it in writing, so whatever.
10          Now, Judge Buchanan is the magistrate judge who's
11  assigned to this case, and again, this is one where I think,
12  you know, you might want to sit down and see whether or not
13  both sides can work this case out early and quickly.  I would
14  think that Ms. Johnson's main interest is to get back on Amazon
15  as quickly as possible and to, and to get this matter over
16  with, because litigation is expensive, and, and we will go
17  ahead and get a scheduling order issued to you today so that
18  that will get the discovery process started, because I don't
19  think one has been -- oh, yes, it is.  You already have one.
20          MR. JOHNSON:  Yes.  And we filed the 26(f) report.
21          THE COURT:  Right.  That's right.  So you're already
22  moving on that.
23          So we will move quickly, but still it's a couple of
24  months before the final resolution of this case if you are
25  unable to settle, but I think in this type of a case,

1   settlement always -- it makes sense to try it.  It may not be

2   successful because I don't know -- have there been any demands

3   made?

4             MR. JOHNSON:  Yes, we've had substantial discussions.

5             THE COURT:  You have.

6             MR. JOHNSON:  They rather stalled, but we are happy

7   to discuss settlement and happy to have the assistance of Court

8   in doing that.

9             THE COURT:  Well, Judge Buchanan is an excellent

10  mediator, and if for any reason, because she may be out of

11  town, if you want to get something done quickly and she's not

12  available, although I know she's actually settled cases over

13  the phone, but Judge Nachmanoff or Judge Anderson, we have

14  several magistrate judges, all of whom are very, very good at

15  settling cases.  All right?

16            MR. JOHNSON:  Very good.

17            THE COURT:  Very good.  We'll recess court for the

18  day.

19                       (Which were all the proceedings

20                        had at this time.)

21                  CERTIFICATE OF THE REPORTER

22     I certify that the foregoing is a correct transcript of

23  the record of proceedings in the above-entitled matter.

24

25                                        /s/
                                   ─────────────────────
                                   Anneliese J. Thomson